Argued and submitted January 27, affirmed May 25, 2016

In the Matter of K. W.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. S.
and I. W.,
*Appellants.*

Multnomah County Circuit Court
2013806141;
Petition Number 110161;
A160209

380 P3d 319

George W. Kelly argued the cause and filed the brief for appellant A. S.

Laura S. Anderson filed the brief for appellant I. W.

Inge D. Wells, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.

## TOOKEY, J.

In this dependency case, mother and father appeal from a judgment changing the permanency plan for their son K from reunification to a "durable guardianship" with K's maternal grandparents. We conclude that the juvenile court did not err and affirm.

K was born in November 2011 and was three years old at the time of the permanency hearing in June and July 2015. In addition to K, father has seven children from a previous relationship who are subject to a separate dependency proceeding and are not involved in this appeal. All of the children were removed from the parents' custody in August 2013, based on allegations of domestic violence, homelessness, and emotional and physical abuse by mother of father's seven children.

The court assumed jurisdiction over K in December 2013, based on the parents' stipulations. Father stipulated to jurisdiction based on domestic violence, residential and financial instability, father's mental health, a lack of skills to parent eight children, and father's exposure to trauma that interfered with his ability to safely parent. Mother stipulated to jurisdiction based on domestic violence, mother's mental health, and mother's inappropriate physical and emotional discipline of father's seven children, some of which had occurred in front of K.

K has been in foster care with his maternal grandparents since he was removed from his parents' custody in August 2013, and he is thriving in that home. At the time of the permanency hearing in June and July 2015, the permanency plan was for reunification, with a concurrent plan of durable guardianship, ORS 419B.366.[1] At the hearing, the juvenile court took testimony from the family's caseworker,

---

[1] ORS 419B.366(5) provides:

"If the court has approved a plan of guardianship under ORS 419B.476, the court may grant the motion for guardianship if the court determines, after a hearing, that:

"(a) The ward cannot safely return to a parent within a reasonable time;

"(b) Adoption is not an appropriate plan for the ward;

"(c) The proposed guardian is suitable to meet the needs of the ward and is willing to accept the duties and authority of a guardian; and

several psychologists, other service providers, family members, and friends. The parents had undergone psychological evaluations that revealed various mental health issues.[2] Both parents had been in counseling for four months and were making positive progress, with mother gaining skills to manage conflicts without becoming explosive, or "saying and doing things that she might later regret." The parents had completed 14 weeks of parenting classes, and mother had been engaged in the process. Mother had completed 52 weeks of domestic violence treatment. The program director testified that mother had not yet graduated from the program because of her failure to acknowledge the abuse and to show empathy for her children. The family's caseworker

---

"(d) Guardianship is in the ward's best interests. In determining whether guardianship is in the ward's best interests, the court shall consider the ward's wishes."

In *Dept. of Human Services v. S. M.*, 355 Or 241, 247-48, 323 P3d 947 (2014), the Supreme Court explained the difference between "permanent" and "durable" guardianships:

"ORS chapter 419B identifies at least two long-term legal guardianships that may be appropriate in lieu of terminating parental rights. First, the juvenile court may establish a permanent guardianship if it finds by clear and convincing evidence that a ground for terminating parental rights exists, that it is in the ward's best interest that the ward's parents should never have physical custody of the ward, but that other parental rights and duties should not be terminated. ORS 419B.365. Second, the court may establish what is sometimes referred to as a 'durable' guardianship if the court finds by a preponderance of the evidence that the ward cannot safely be returned home within a reasonable time, that adoption is not an appropriate plan for the ward, that the proposed guardian is suitable, and that a durable guardianship is in the ward's best interests. ORS 419B.366(2)."

As the court noted, "[a] durable guardianship differs from a permanent guardianship in that the criteria for establishing a durable guardianship are less stringent than those for a permanent guardianship. *Compare* ORS 419B.366(5) (durable guardianship), *with* ORS 419B.365(2), (3) (permanent guardianship). Moreover, a parent may move to vacate a durable guardianship but not a permanent guardianship. *See* ORS 419B.368(1), (7)." 355 Or at 248 n 3.

[2] Mother was diagnosed with "anxiety disorder NOS [not otherwise specified], with prominent obsessive compulsive features; major depressive disorder, mild to moderate recurrent; marijuana abuse versus dependence, reportedly in early remission; alcohol abuse per history reportedly resolved; personality disorder NOS with prominent narcissistic paranoid and borderline features." Father's evaluation revealed that father has limited intellectual ability indicative of mild mental retardation, with limited language capacity and very narrow attention span, limited capacity for problem solving and managing stress. Father was diagnosed with "mixed disturbance of personality functioning, mild mental retardation and chronic adjustment disorder, along with features of PTSD [posttraumatic stress disorder]." His limited intellectual capacity makes it difficult for him to recognize risk to the children or internalize instruction to safely parent.

testified that mother was making progress in controlling her emotions and that both parents had a strong relationship with K. But the caseworker was disappointed with the parents' failure to acknowledge their former inappropriate physical discipline of father's children and that it had been harmful to K. The child's therapist testified that K was at a stage in his development that was critical for experiencing personal attachments and that he was showing signs of emotional problems related to a need for permanency. In her opinion, a guardianship will be beneficial to K, because it would provide an additional element of permanency, as K would know that he would be growing up in his grandparents' home.[3]

In its permanency judgment of July 23, 2015, the juvenile court determined that the Department of Human Services (DHS) had made "reasonable efforts" to reunify the family, but that the parents had not made sufficient progress toward meeting the expectations set forth in the service agreement; that K could not be safely returned to the parents' care; and that the evidence did not support a determination that further efforts by DHS will make it possible for K to return home within a reasonable time. *See* ORS 419B.476(2)(a) (describing requirements when permanency plan is reunification at time of hearing); ORS 419B.476(4)(c) (authorizing court to order parents to participate in services if it determines that "further efforts will make it possible for the ward to safely return home within a reasonable time"). The court changed the permanency plan to a durable guardianship with a concurrent plan of reunification. *See* ORS 419B.476(5)(b)(C) (court's determination of permanency plan); ORS 419B.366(5) (durable guardianship). K would remain within the court's jurisdiction during the durable

---

[3] In response to questions about the practical implications for K of changing from reunification to guardianship, the counselor testified:

"[T]here will be different messages that will be communicated to him about the role of his grandparents that I think would be helpful to him, \* \* \* if the plan is that he is not going to return home. He needs to know either way. Is he going to return home to mom and dad, or am I staying here with my grandparents. And that's concrete information. You are going to \* \* \* stay with grandma and grandpa. We're going to keep taking care of you and are in charge of you and keeping you safe and helping you to grow and learn. Maybe you are \* \* \* still having contact with your birth parents, but he needs that information. And that's information that he is not getting."

guardianship, which could be vacated by the juvenile court pursuant to ORS 419B.368(1) ("The court * * * may review, modify, or vacate a guardianship order.").

In deciding to change the permanency plan away from reunification, the court's primary rationale was that two years had passed without adequate progress by the parents, despite extensive involvement by DHS. *See* ORS 419B.498(1) (requiring that DHS file a petition to terminate parental rights and begin adoption placement if the child has been in substitute care as a ward of the court for 15 of the last 22 months). In the judgment, the court listed the services that DHS had provided that led the court to conclude that DHS had made reasonable efforts toward reunification. The court also made extensive findings concerning the parents' progress. The court found that, initially, the parents' participation in services had been poor, but that it had recently improved. The court noted mother's recent progress, but found that father had not made any progress toward becoming a safe parent. Despite the lengthy involvement of DHS, the court found that the parents still lacked insight into the reasons why the court had assumed jurisdiction of K, which led the court to find that it was unlikely that they could gain that insight within a reasonable time.

With respect to the testimony of both parents at the permanency hearing, the court found that they were not "accurate reporters." The court was concerned that both parents denied the bases on which the court had taken jurisdiction and blamed others, including DHS, for K becoming a ward of the court. The court was troubled by statements made at the hearing by both parents that were inconsistent with their stipulations related to jurisdiction and that showed a lack of insight. For example, father denied that there had been domestic violence and did not acknowledge the problems that led to K becoming a ward of the court. He stated that DHS's involvement had been brought on by the lies of his children. Despite evidence of extensive services, father testified that DHS had not provided any help. The court noted that, despite the stipulated bases for jurisdiction, mother denied having directed any inappropriate conduct toward father's seven children and that that was one reason why she had not completed a domestic violence

program. Mother's testimony and demeanor at the hearing led the court to find that mother lacked an ability to "regulate" herself.[4] Based on those findings, the court concluded with respect to both parents that "[a]ny progress is simply too slow and too late to believe that reintegration of this child to the care of the parents will occur within a reasonable time."

In the judgment, the court explained that it chose a modifiable or durable guardianship with the maternal grandparents, rather than adoption, because K was thriving there, and he would be able to maintain his connection to his parents and extended family "while having a consistent nurturing environment free of chaos and violence." The court considered a durable guardianship to be a better alternative to adoption for maintaining K's close relationship with his family. *See* ORS 419B.498(2) (describing alternatives to termination and adoption under certain circumstances); *see also S. M.*, 355 Or at 252 (describing durable guardianship as a long-term alternative to termination).

On appeal, both parents contend that the juvenile court erred in determining that they had not made sufficient progress and that it was in K's best interests to change the permanency plan away from reunification. Mother also contends that DHS failed to make reasonable efforts.

Because this is not an exceptional case justifying the exercise of our discretion to review *de novo*, ORAP 5.40(8)(c), in our review of the juvenile court's rulings, we are bound by the juvenile court's findings of historical fact if there is any evidence in the record to support them. *Dept. of Human Services v. G. N.*, 263 Or App 287, 294, 328 P3d 728, *rev den*, 356 Or 638 (2014). We view the evidence, including any permissible inferences, in the light most favorable to

---

[4] In 2011, father had been shot and seriously injured by his former spouse's partner. In response to a question by K's counsel, mother testified that if father ever were threatened by his former spouse, she would "take everybody out." When asked to elaborate, mother responded:

"Now if that was going to happen, I would have turned around and probably taken everybody's life out in front of him and our kids. And that's on my son. If anything happens to him or all eight of our kids, I'm going to fight, period. * * * five gallons and a match. I will burn everybody down. That's how I feel, that's how I think."

the juvenile court's disposition and assess whether, when so viewed, the record was legally sufficient to permit the juvenile court's disposition. *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013). We review the juvenile court's conclusions that DHS's efforts were reasonable and that the parents' progress was insufficient for legal error. *G. N.*, 263 Or App at 294.

Before a permanency plan may be changed from reunification to a different plan, ORS 419B.476(2)(a) requires that the juvenile court determine that DHS has made "reasonable efforts * * * to make it possible for the ward to safely return home." As noted, the court listed in its judgment the many services that DHS had provided for the parents. But mother complains that DHS did not make reasonable efforts, because it did not provide her with a recommended psychiatric evaluation for medication. As DHS correctly points out, the "reasonable efforts" standard does not require that DHS provide every service that is recommended. In determining whether DHS's efforts have been reasonable, the court looks at the totality of the circumstances. *See Dept. of Human Services v. M. K.*, 257 Or App 409, 416-17, 306 P3d 763 (2013) (In making a reasonable efforts determination, the court considers the burdens that the state assumes in providing services and what benefits might reasonably be expected to flow from them.). The record in this case includes evidence that the DHS caseworker offered to have mother pursue the psychiatric evaluation for medication, but that mother declined, insisting that she was not experiencing any symptoms that would justify an evaluation. We conclude that the evidence is legally sufficient to support the juvenile court's determination that DHS made reasonable efforts.

Before changing a plan away from reunification, a court is also required to determine that the parent's progress was insufficient "to make it possible for the ward to safely return home." ORS 419B.476(2)(a). Pursuant to ORS 419B.476(4)(c) and ORS 419B.476(5)(c), the juvenile court may continue a plan of reunification if it determines that "further efforts will make it possible for the ward to safely return home within a reasonable time." Both parents contend that they have made progress and that, contrary to the trial court's conclusion, further efforts will make it possible

for K to be safely returned home within a reasonable time. The juvenile court found that father has made little or no progress in addressing the issues that brought K into the state's care. We conclude without further discussion that that determination is supported by legally sufficient evidence.

With respect to mother, although the court noted evidence that mother had made some progress, the court was skeptical of that progress and whether it would continue. The court highlighted mother's testimony suggesting that mother lacks the ability to regulate her behavior. Additionally, the court was concerned that, despite a long period of participation, mother had yet to complete the domestic violence program because of her refusal to admit that she had caused harm to father's older children. The court found that the evidence suggested that it could be at least another year before mother is able to reliably apply what she has learned.

Mother does not dispute that she is not yet ready to assume custody of K. But she contends on appeal that there is no evidence in support of the trial court's finding that she will not be able to parent within a year, and that the evidence supports a finding that with additional services she will continue to make progress and will be able to parent K within a reasonable time. Although there is no direct testimony that, as the trial court found, it will take mother at least a year to be able to parent, that inference is a permissible one on the record.[5] We conclude that the evidence in the record supports the juvenile court's findings and its determination that mother has not made sufficient progress and is not likely to be able to parent K within a reasonable time.

Mother contends, finally, that because of K's young age and, because the intended guardians are his grandparents with whom he has been living (with extensive visitation with parents), it makes no sense to change to a guardianship, which would be of no practical consequence to K.

_____

[5] A psychologist, who had evaluated mother for domestic violence and heard her testimony, testified that mother would not experience sustained improvement with respect to empathy and accountability for her behavior for at least eight to 10 months from the date of the hearing.

Additionally, mother contends that, because it is subject to change, the guardianship provides no more permanency than the current plan. For those reasons, mother contends, it is reasonable to continue the plan of reunification for an additional period of time so that mother can continue to receive services directed toward reunification.

There is evidence in the record that supports mother's view that a change to guardianship will have little practical consequence on K in terms of his day-to-day awareness of permanency. But, as the state responds, there is also evidence that supports a finding that there will be an increased sense of permanency afforded by the guardianship and, further, that the guardianship will be in K's best interests. *See* ORS 419B.366(5)(d) (court may grant motion for guardianship if it determines that "guardianship is in the ward's best interests"). The guardianship continues for as long as the child is within the juvenile court's jurisdiction or until it is vacated by the court. *See* ORS 419B.368 (review, modification, vacation of guardianship order). In light of the duration of the wardship and the lack of sufficient progress by parents, the juvenile court did not err in changing the permanency plan away from reunification. The juvenile court correctly concluded under the circumstances that a termination of parental rights and adoption are not in K's best interests and that a durable guardianship is an appropriate permanency plan.

Affirmed.