Argued and submitted August 20, affirmed September 9, 2021

In the Matter of D. A.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

D. E. A.
and S. G.,
*Appellants.*

Multnomah County Circuit Court
18JU09587; Petition Number 113490;
A175251 (Control), A175254

In the Matter of A. A.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

D. E. A.
and S. G.,
*Appellants.*

Multnomah County Circuit Court
18JU09588; Petition Number 113490;
A175252, A175255

In the Matter of D. A.,
aka D. G., a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

D. E. A.
and S. G.,
*Appellants.*

Multnomah County Circuit Court
18JU09589; Petition Number 113490;
A175253, A175256

499 P3d 876

In this case subject to the Indian Child Welfare Act (ICWA), mother and father each appeal from permanency judgments for their three children. The juvenile court changed the children's permanency plans from reunification to guardianship and provided for the children to be placed with a maternal relative in Texas for guardianship purposes. Mother challenges the change of plan for each child, arguing that DHS did not make "active efforts" toward reunification, as is required for Indian children under ORS 419B.476(2)(a). Father also challenges the change of plan for each child, arguing both that DHS did not make "active efforts" and that his own progress was sufficient to continue planning for reunification. Father further challenges the orders allowing the children to move to Texas, which he argues violate the placement requirements for Indian children under 25 USC § 1915(b). *Held*: On this record, the juvenile court did not err in changing the plan from reunification to guardianship. Further, the juvenile court did not err in allowing the children to be placed in Texas under the specific facts and circumstances of this case.

Affirmed.

Sandra Y. Vallejo, Judge pro tempore.

George W. Kelly argued the cause and filed the brief for appellant D. E. A.

G. Aron Perez-Selsky and Michael J. Wallace filed the brief for appellant S. G.

Philip Thoennes, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and James, Judge, and Aoyagi, Judge.

AOYAGI, J.

Affirmed.

**AOYAGI, J.**

In this juvenile dependency case that is subject to the Indian Child Welfare Act (ICWA),[1] mother and father each appeal from permanency judgments for their three children, who were aged seven, five, and one at the time of entry of the judgments. The juvenile court changed the children's permanency plans from reunification to guardianship. The court also provided for the children to be placed with a maternal relative in Texas for guardianship purposes. Mother challenges the change of plan for each child, arguing that the Department of Human Services (DHS) did not make "active efforts" toward reunification, as required by ORS 419B.476(2)(a). Father also challenges the change of plan for each child—arguing both that DHS did not make "active efforts" and that his own progress was sufficient to continue planning for reunification—as well as challenges the orders allowing the children to move to Texas, which he argues violate the placement requirements for Indian children under 25 USC § 1915(b).

With respect to the change of plan, under ORS 419B.476(2)(a), in a case subject to ICWA, a juvenile court may change a child's permanency plan away from reunification only if DHS proves, among other things, that DHS made "active efforts" to make it possible for the child to be reunited with the parent and, notwithstanding those efforts, the parent's progress was insufficient to make reunification possible. *Dept. of Human Services v. D. L. H.*, 251 Or App 787, 798, 284 P3d 1233, *adh'd to as modified on recons*, 253 Or App 600, 292 P3d 565 (2012), *rev den*, 353 Or 445 (2013). Having considered the parties' arguments, the record, and the relevant authorities and precedent, we conclude that the juvenile court's findings are supported by evidence and that the juvenile court did not commit reversible error by changing the children's permanency plans to guardianship. *See Dept. of Human Services v. T. J.*, 302 Or App 531, 533, 462 P3d 315 (2020) (standard of review). We affirm the change

---

[1] All references are to the federal ICWA. The Oregon legislature recently enacted an Oregon ICWA—*see* Or Laws 2020, ch 14, §§ 1-66 (Spec Sess 1)—but it took effect on January 1, 2021, *after* the entry of the judgments that are the subject of this appeal.

of the children's permanency plans without further written discussion.

As for father's challenge to the juvenile court allowing the children to be placed in Texas, we write to address that issue, which raises a question of statutory construction. For the reasons described below, we ultimately conclude that the juvenile court did not err. Accordingly, we affirm the judgments.

## FACTS

Father and mother have three children born in 2013, 2015, and 2018. The children are enrollable as members of the Makah Tribe.

In February 2019, the juvenile court asserted dependency jurisdiction over the children.

In December 2020, the juvenile court changed the children's permanency plans from reunification to durable guardianship and provided for them to be placed with a maternal relative in Texas, which was the only relative placement known to be available, and which would allow the children to stay together. The children's attorney, the children's court-appointed special advocate, and the Makah Tribe all supported the change of permanency plans, as well as supported the children's placement in Texas, which, in the Tribe's view, complied with the placement preferences in ICWA.

With respect to the placement in Texas, earlier in the dependency proceeding, the children had lived in Oregon with their maternal relative, M, who moved here from Texas with the hope that she would be able to return with the children to Texas once her home was approved under the Interstate Compact on the Placement of Children (ICPC). Due to delays in the case, M eventually had to return to Texas to support her own family's educational and emotional needs, at which point the children were placed in nonrelative foster case.

In the permanency judgments entered on December 11, 2020, the juvenile court found "by clear and convincing evidence that the plan should change to a plan of durable

guardianship with the children being allowed to be placed in Texas with ICPC as quickly as possible." In orders entered on December 15, 2020, the juvenile court expressly approved the placement of the children in Texas with M, finding that M's home had been approved as a placement under the ICPC and that placement with M was in each child's best interests and was the most family-like setting.[2]

## ANALYSIS

Because the children are enrollable as members of the Makah Tribe, ICWA applies. *See* 25 USC § 1903(4) (definition of "Indian child" for ICWA purposes). Father contends that, under ICWA, it was error for the juvenile court to approve the children to be placed in Texas, because Texas is not "within reasonable proximity to [their] home." 25 USC § 1915(b).

Whether a child's placement complies with ICWA is a legal question that we review "for legal error, viewing the evidence in the light most favorable to the juvenile court's determinations and assuming the correctness of that court's explicit factual findings if any evidence in the record supports them." *T. J.*, 302 Or App at 533.

Section 1915 imposes certain requirements for the placement of Indian children in foster care and adoptive homes. *See* 25 USC § 1915. Subsection (b)—which applies to durable guardianship placements, *Dept. of Human Services v. J. G.*, 260 Or App 500, 516, 317 P3d 936 (2014)—states in full:

> "Any child accepted for foster care or preadoptive placement shall be placed in the least restrictive setting which most approximates a family and in which his special needs, if any, may be met. *The child shall also be placed within reasonable proximity to his or her home, taking into account any special needs of the child.* In any foster care or preadoptive placement, a preference shall be given, in the absence of good cause to the contrary, to a placement with—

> "(i)   a member of the Indian child's extended family;

_____

[2] The children remained in Oregon until June 2021, when a stay that the juvenile court had imposed at mother and father's request was lifted.

"(ii)   a foster home licensed, approved, or specified by the Indian child's tribe;

"(iii)   an Indian foster home licensed or approved by an authorized non-Indian licensing authority; or

"(iv)   an institution for children approved by an Indian tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs."

25 USC § 1915(b) (emphasis added).

To determine the meaning of a federal statute, we examine its text and structure and, if necessary, its legislative history. *AT&T Communications v. City of Eugene*, 177 Or App 379, 402, 35 P3d 1029 (2001), *rev den*, 334 Or 491 (2002). "When the meaning of the statute's terms is plain, our job is at an end." *Bostock v. Clayton County, Georgia*, ___ US ___, 140 S Ct 1731, 1749, 207 L Ed 2d 218 (2020).

The word "shall" generally connotes an imperative. *Stanley v. Mueller*, 211 Or 198, 208, 315 P2d 125 (1957). Thus, on its face, section 1915(b) requires the juvenile court to place an Indian child (1) in the least restrictive setting that most approximates a family in which any special needs that the child has may be met, *and* (2) within reasonable proximity to the child's home, taking into account any special needs that the child has, *and* (3) with a member of the child's extended family or in another legislatively preferred placement, unless there is good cause not to use a preferred placement.

There are times that the word "shall" means "may" in context, *Stanley*, 211 Or at 208, but we agree with father that this is not one of those times. Statutory provisions that "are the very essence of the thing required to be done are regarded as mandatory." *Id.* (internal quotation marks omitted). Here, each sentence of section 1915(b) sets out an essential thing required to be done, and we understand each thing to be mandatory. We therefore disagree with DHS to the extent it suggests that any of the "shall" provisions in section 1915(b) are not mandatory.

We are also disinclined to view section 1915(b) as setting out a list of factors to be "balanced," which is how DHS frames the juvenile court's task. If Congress had

intended a traditional balancing test—in which multiple factors are set forth for a court to consider and to exercise broad discretion in balancing—we believe that Congress would have used different statutory language than it did.

That said, Congress did build some give-and-take into the three requirements of section 1915(b) as they relate to one another. The first requirement—that an Indian child be placed in the least restrictive setting that most approximates a family and in which any special needs of the child may be met—is the most unequivocal. The second requirement—that an Indian child be placed within reasonable proximity to the child's home, taking into account any special needs of the child—contains some wiggle room by virtue of the word "reasonable." And the third requirement—that an Indian child be placed in one of four legislatively preferred types of placements—also contains wiggle room, in that there is an express exception for situations in which the juvenile court determines that "good cause" exists not to use a preferred placement.

With that in mind, we consider the specific language in dispute, which requires an Indian child to "be placed within reasonable proximity to his or her home, taking into account any special needs of the child." The question is how much proximity is "reasonable"? Father contends that Texas is simply too far from the Portland area (the children's home[3]) to be considered reasonably proximate by any measure. The state contends that Texas is reasonably proximate under the circumstances.

In this context, we understand Congress's use of the word "reasonable" to mean that the juvenile court must place the child as close to home as it is objectively reasonable to do while also satisfying the other placement requirements in section 1915(b). Because all three requirements are mandatory, that is the logical construction of the statute.

---

[3] ICWA does not define the term "home." The BIA Guidelines do not address its meaning. *See generally* U.S. Dept. of the Interior, Bureau of Indian Affairs, Guidelines for Implementing the Indian Child Welfare Act. Further, the parties have not briefed the construction of that term as used in ICWA, and we have found no Oregon or federal cases construing that term as used in ICWA. For present purposes, we assume without deciding that Portland—where parents live and where the children lived with them before their removal—is the children's home.

The word "reasonable" inherently requires consideration of the relevant circumstances, as nothing is "reasonable" or "unreasonable" in a vacuum. *See Webster's Third New Int'l Dictionary* 1892 (unabridged ed 2002) (defining "reasonable," as relevant here, to mean "being or remaining within the bounds of reason : not extreme : not excessive"). Here, given the statutory structure, we understand the circumstances relevant to whether an Indian child's proximity to home is "reasonable" to include, first and foremost, any special needs that the child has, but also the restrictiveness of different placements available to the child, the preferential status of any placements available to the child, and other considerations that go to the child's best interests.

Applying that understanding of the statute, we agree with DHS that Texas is in "reasonable" proximity to the children's home in Oregon under the specific circumstances of this case. *Cf. State ex rel Juv. Dept. v. Charles*, 106 Or App 637, 641, 810 P2d 393, *rev den*, 31 Or 150 (1991) (concluding that placing an Indian child with her aunt in Alaska was "consistent with the evidence and 25 USC § 1915(b)"). The placement with M is the only relative placement available to the children. It is the most family-like setting. It allows the children to stay together. The Tribe supports the placement. Moreover, the children are no longer on a plan of reunification, but durable guardianship, which is relevant to what is reasonable. *Cf. In re Anthony T.*, 208 Cal App 4th 1019, 1030, 146 Cal Rptr 3d 124 (2012) ("When the primary goal of dependency proceedings is family reunification, the location of an Indian child's placement must reasonably support that goal, including frequent visitation between parent and child.").

Under the circumstances, M's home in Texas is in "reasonable proximity" to the children's home in Oregon. In so concluding, we stress that we are not saying that Texas is in reasonable proximity to Oregon for all Indian children. It is reasonably proximate for these children, on this record, in these circumstances.[4]

---

[4] As part of its argument, the state points to a federal regulation and to the BIA Guidelines as supporting the children's placement in Texas. The federal regulation is phrased differently from the statute in a way that raises potentially complicated issues that the parties have not briefed. *Compare* 25 USC § 1915(b)

That leaves only the issue of whether it is in the children's best interests to be placed in Texas. Father briefly argues that it is not, because the children have enjoyed having regular visits with him and mother and "wish to return home." That argument fails to account for the fact that the permanency plan is no longer reunification. *See Dept. of Human Services. v. A. S.*, 278 Or App 493, 495 n 1, 502, 380 P3d 319 (2016) (discussing durable guardianships). In any event, on this record, we conclude that the juvenile court did not abuse its discretion in determining that the placement is in the children's best interests. *See Dept. of Human Services v. T. C. A.*, 251 Or App 407, 414-15, 283 P3d 956, *rev den*, 352 Or 665 (2012) (standard of review).

Affirmed.

---

(requiring an Indian child to be placed "within reasonable proximity to his or her home, taking into account any special needs of the child"), *with* 25 CFR § 23.131(a)(3) (requiring an Indian child to be placed "in reasonable proximity to the Indian child's home, extended family, or siblings"). And the BIA Guidelines rely on the rule language. *See* U.S. Dept. of the Interior, Bureau of Indian Affairs, Guidelines for Implementing the Indian Child Welfare Act § H.2 at 57; *T. J.*, 302 Or App at 541 n 7 (describing the BIA Guidelines as "instructive" in understanding ICWA's requirements, but not binding). Given the relatively limited briefing that we have received, we are disinclined to rely on the cited administrative rule or the BIA Guidelines in reaching our decision, but we do agree with the state that both 25 USC § 1915(b) and the BIA Guidelines would support the children's placement with M in Texas.