***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

Argued and submitted July 24, affirmed September 13, 2023

In the Matter of A. L. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. M.
and M. U.,
*Appellants.*

Polk County Circuit Court
17JU10721, 19JU05957; A180454 (Control), A180455

In the Matter of A. P. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. M.
and M. U.,
*Appellants.*

Polk County Circuit Court
17JU10722, 19JU05958; A180458, A180459

Norman R. Hill, Judge.

George W. Kelly argued the cause and filed the brief for appellant M. U.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Holly Telerant, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant M. M.

Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Mooney, Presiding Judge, and Lagesen, Chief Judge, and Armstrong, Senior Judge.

MOONEY, P. J.

Affirmed.

**MOONEY, P. J.**

Mother and father appeal from the permanency judgments in these consolidated juvenile dependency cases that changed the permanency plan for their two youngest children, L (eight years old) and P (six years old), from reunification to adoption. Father asserts six assignments of error and mother asserts two. Both argue, essentially, that the juvenile court erred 1) in finding that the Department of Human Services (DHS) used reasonable efforts to reunify the family, 2) in finding that mother made insufficient progress toward the children's safe return home, and 3) in changing the permanency plans to adoption. We conclude that evidence in the record supports the juvenile court's reasonable efforts and parental progress findings and that it did not err in changing the permanency plan to adoption for the two youngest children in this family. We affirm.

We review the juvenile court's reasonable efforts and parental progress findings for legal error. *Dept. of Human Services v. D. M.*, 310 Or App 171, 173, 483 P3d 1248 (2021). We are bound by the juvenile court's "findings of historical fact if there is any evidence in the record to support" those findings. *Dept. of Human Services v. J. G.*, 260 Or App 500, 504, 317 P3d 936 (2014). We are likewise bound by the juvenile court's express credibility findings when there is evidence in the record to support those findings. *Dept. of Human Services v. A. J. G.*, 304 Or App 221, 228 n 4, 465 P3d 293, *rev den*, 366 Or 826 (2020); *Dept. of Human Services v. A. L. S.*, 318 Or App 665, 667, 508 P3d 79 (2022) (The Court of Appeals is bound by a juvenile court's credibility finding). DHS has been involved with this family for a long time. It would not benefit the parties, the bar, the bench, or the public to recite all the details of that history. To the extent that context is important to understanding our assessment of the juvenile court's decision to change the permanency plans, we provide the following summary, drawn from the record and stated in accordance with our standard of review.[1]

---

[1] Before changing the case plan from reunification to another plan, the juvenile court must determine whether DHS proved by a preponderance of the evidence that DHS made reasonable efforts to make it possible for the child to safely return home, and that, despite those efforts, the parent made insufficient progress to make it possible for the child to safely return home. ORS 419B.476(2)(a).

This farming family is bicultural and bilingual. Mother is from a small village in Thailand. She speaks Akha and some English, although she does best with the assistance of a language interpreter when English is the language being used. DHS removed mother and father's six children from their care in December 2017, after father's older daughter from a prior marriage reported that she had been sexually abused by father when she was younger and that she had also been physically abused by both father and mother (her stepmother). The juvenile court asserted jurisdiction over the children, and mother complied with the court's orders and completed the services provided for her by DHS. Father initially attempted to attend a class or two but did not comply with any of the court-ordered services provided by DHS. Father denied, and continues to deny, the allegations of abuse. Mother has been inconsistent in acknowledging the abuse but has generally expressed disbelief that father poses any risk to his children. The four older children lived with mother at the time of the permanency hearing either because they had aged out of foster care or because the court had previously approved their return to mother's home. Father moved out of the family home soon after the court asserted jurisdiction, and he does not live with mother or the children. Father remains financially and otherwise entwined with his family.

The jurisdictional bases have changed over time and, at the time of the permanency hearing in question, there was only one remaining basis for mother: that she is unable to meet her children's basic needs and is unwilling/unable to protect her children from the safety risks posed by their father. Neither mother nor father contests the factual bases underlying jurisdiction as to father. They instead argue that mother no longer poses a risk of harm and that she would not allow father to have contact with their youngest children, even after jurisdiction is dismissed and wardship terminated.

The juvenile court previously made a "no reasonable efforts" finding because DHS had not provided services designed to help mother increase her ability to protect her children from father. DHS was thereafter directed to

provide mother with a class or program designed to help her increase her protective capacity. DHS arranged for mother to attend an appropriate trauma informed parenting course, suggested by her lawyer. And while the agency did not arrange for the written materials to be translated in writing, an interpreter worked with mother throughout the program, and she completed it. The interpreter reported that mother expressed "animosity" toward DHS, and that she said she believed that her children's trauma was a result of their removal and time in foster care.

The court also directed DHS to arrange for visits that would keep the children connected with mother, her culture, and her language. Visits occurred at the family farm, with the family's church community providing safety service providers. There were concerns about the safety service providers' willingness to report to DHS about risks to L and P, and, despite being provided guidelines for the visits, mother repeatedly had inappropriate conversations with the children. In-home visits were stopped altogether. DHS offered to resume visits in its office, but mother refused.

In August 2022, DHS asked the court to change the permanency plan for both children from reunification to adoption, which mother and father opposed. After the permanency hearing, the court issued extensive findings and a written opinion and judgment changing the permanency plan to adoption. It concluded that father remained "an extraordinary and profound risk" to the children, that mother remained "unwilling or unable to keep the children from [f]ather," that an in-home plan was inappropriate given the circumstances of the case, and that despite the reasonable efforts of DHS, L and P could not be returned home in a reasonable time and the plan should be changed to adoption.

As to the agency's efforts, the court wrote:

"Last spring, the court declined to change the plan because Mother, through counsel, convinced the court that the agency had not utilized reasonable efforts to address Mother's protective capacity relative to Father's risk. The agency referred Mother to parenting classes and a psychological evaluation but did not specifically address Mother's lack of insight into Father's behavior.

"During that hearing, Mother's counsel suggested there was a class she could take that would help address that issue. Mother has now taken that class. But she remains in the same position as before. She is incapable of seeing Father as anything other than a loving and supportive parent. She is unwilling to acknowledge even her own prior reports that he sexually abused her stepdaughter.

"Under the circumstances, the agency has made reasonable efforts. No party has identified any additional resources or service that might assist this family. Instead, Mother and Father simply urge the court to trust them with their children's safety. Given the record of this case, that position is simply untenable."

The record supports the court's determination that, under the totality of the circumstances, DHS provided mother "a reasonable opportunity to demonstrate [her] ability to adjust [her] conduct and become a minimally adequate parent." *Dept. of Human Services v. R. C.*, 320 Or App 762, 769, 514 P3d 538, *rev den*, 370 Or 404 (2022) (internal quotation marks and brackets omitted).

On the related issue of parental progress, we have held that where the juvenile court is evaluating one parent's ability and willingness to protect a child from the other parent, "it is proper to defer to the trial court's credibility findings[.]" *State ex rel Dept. of Human Services v. S. L.*, 211 Or App 362, 375, 155 P3d 73 (2007).[2] We do so here. The juvenile court ultimately found that "[u]nder these circumstances, the court simply does not believe Mother's recent claim that she will keep Father away from the children if the court and DHS are no longer involved." The record supports that finding. *See Dept. of Human Services v. G. N.*, 263 Or App 287, 297, 328 P3d 728, *rev den*, 356 Or 638 (2014) ("Even if a parent has completed all services that have been required, evidence that a parent continues to engage in behavior that is harmful to a child supports a determination that the parent has not made sufficient progress to make it possible for the child to return home.").

---

[2] We review the evidence differently here than we did in *S. L.*, where we conducted *de novo* review. Given that difference, we not only defer to the juvenile court's credibility findings, but we are also bound by them so long as there is any evidence in the record to support those findings. *A. J. G.*, 304 Or App at 228 n 4.

The juvenile court concluded that the youngest children are at significant risk of harm resulting from sexual and physical abuse from father and that it was not persuaded that mother will protect children from father if the plan remains reunification. The record is legally sufficient to support those findings and to permit the juvenile court to change the permanency plan to adoption.

Affirmed.