Argued and submitted November 6, reversed and remanded December 18, 2019

In the Matter of M. M. R.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

D. M. R.,
*Appellant.*

Lane County Circuit Court
17JU10822, 18JU08099;
A171340 (Control), A171341

455 P3d 599

In this juvenile dependency case, father appeals from a judgment changing his child's permanency plan from reunification to adoption. At the permanency hearing, the juvenile court ruled that the Department of Human Services (DHS) satisfied its burden to prove that it made reasonable efforts to assist father in ameliorating the jurisdictional basis, father's "chaotic lifestyle and chaotic relationship with mother." On appeal, father asserts that, although DHS provided bus passes, a referral to parent training, and a referral to "Womenspace," DHS has not met its burden to prove that those services were sufficiently related to resolving the jurisdictional basis. DHS responds that, because it referred father to Womenspace only after it was clear that he was a victim of domestic violence, the court can reasonably infer that Womenspace provides assistance to victims of domestic violence, which could have assisted father in his chaotic relationship with mother, had he chosen to utilize those services. *Held*: DHS failed to present evidence from which the juvenile court could reasonably infer that the services provided could help father ameliorate the jurisdictional basis, and, thus, did not satisfy its burden.

Reversed and remanded.

Clara L. Rigmaiden, Judge.

Tiffany Keast, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Nicholas Greenfield, Certified Law Student, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jona J. Maukonen, Assistant Attorney General.

Before Ortega, Presiding Judge, and Shorr, Judge, and James, Judge.

JAMES, J.

Reversed and remanded.

**JAMES, J.**

In this juvenile dependency case, father appeals from a judgment changing his child's permanency plan from reunification to adoption. At the permanency hearing, the juvenile court ruled that the Department of Human Services (DHS) satisfied its burden to prove that it made reasonable efforts to assist father in ameliorating the jurisdictional basis, father's "chaotic lifestyle and chaotic relationship with mother."[1] On appeal, father asserts that, although DHS provided bus passes, a referral to parent training, and a referral to "Womenspace," DHS did not meet its burden to prove that these services were sufficiently related to resolving the jurisdictional basis. DHS responds that, because it referred father to Womenspace only after it was clear that he was a victim of domestic violence, the court can reasonably infer that Womenspace provides assistance to victims of domestic violence, which could have assisted father in his chaotic relationship with mother, had he chosen to utilize the services. We agree with father, and on this limited record, conclude that DHS failed to present evidence from which the juvenile court could reasonably infer that the services provided could help father ameliorate the jurisdictional basis, and, thus, did not meet its burden. Accordingly, we reverse and remand.

Neither party has requested *de novo* review, and this is not the type of "exceptional" case that warrants *de novo* review. As we have explained, on appeal of a permanency judgment, "[t]he juvenile court's determination[] whether DHS's efforts were reasonable *** [is a] legal conclusion[] that we review for errors of law." *Dept. of Human Services v. G. N.*, 263 Or App 287, 294, 328 P3d 728, *rev den*, 356 Or 638 (2014) (internal citations omitted). In conducting that review, we are bound by the juvenile court's explicit factual findings if there is any evidence to support those findings. *Id.* To the extent that a court does not make its findings express, we presume that the court made implicit factual findings in a manner consistent with its ultimate legal conclusion. *Id.*

---

[1] Although the permanency judgment encompasses two cases, one case for father and mother (17JU10822) and another case for biological father (18JU08099), only the portion of the judgment pertaining to father is contested on appeal.

However, "[i]f an implicit factual finding is not necessary to a trial court's ultimate conclusion or is not supported by the record, then the presumption does not apply." *Pereida-Alba v. Coursey*, 356 Or 654, 671, 342 P3d 70 (2015). The issue here, whether the department made reasonable efforts to assist father in alleviating the jurisdictional basis, is a highly fact-specific inquiry warranting a detailed recitation of the facts below. *Dept. of Human Services v. J. E. R.*, 293 Or App 387, 394, 429 P3d 420 (2018).

M was removed from mother's and father's care and placed in foster care in December 2017, due to domestic violence between mother and father. Shortly thereafter, the court asserted jurisdiction over M, as pertains to father, based on father's admission that his "chaotic lifestyle and chaotic relationship with mother interferes with his ability to safely parent." Additionally, the court asserted jurisdiction over M, as pertains to mother, based on her domestic violence toward father, substance abuse, chaotic lifestyle, mental health condition, and criminal behaviors. On a later date, in a separate case, the court also asserted jurisdiction based on allegations regarding M's biological father. As noted above, only the portion of the permanency judgment pertaining to father is presented for appeal; therefore, only the facts pertaining to his appeal are set forth below. Because father challenges only whether DHS made reasonable efforts, we focus on what efforts DHS made for father.

Following the court taking jurisdiction over M, father and mother continued their relationship. During the period between the jurisdictional trial and the permanency hearing, mother physically abused father "quite often." After one particularly violent interaction, she was incarcerated for assaulting him, and he obtained a restraining order against her. When she was released, however, father dropped the restraining order to continue assisting mother in her addiction recovery.

A DHS caseworker met with father and suggested that he utilize services at various facilities, including "Womenspace." In the following months, however, a different caseworker was assigned to the case. DHS did not present testimony from the prior caseworker. The subsequent

caseworker's testimony revealed that, although he was unfamiliar with Womenspace, the services it provided, or the reason that the previous caseworker referred father there, he knew that father attended at least one meeting there based upon pamphlets he received from DHS.

The caseworker also referred father to a "navigator" to assist father in finding safe and stable housing. Mother and father met with the navigator to coordinate housing together, but, the navigator refused to work with mother after her violent outburst during the meeting.

Father sought to purchase a motorhome for him and M to live in. DHS was unable to provide financial assistance for the purchase, but DHS somewhat lessened father's financial burden by occasionally providing bus passes and cell phone minutes. Because DHS was unable to assist with the motorhome purchase, the caseworker referred father to "St. Vinnie's" and "The Mission" for housing. Father was concerned, however, that "St. Vinnie's" had provided him with unsafe housing in the past and that mother's friends in "The Mission" could jeopardize her addiction recovery progress, so he did not use the services. Father testified at the permanency hearing that he had purchased a motorhome without assistance from DHS.

Pursuant to court order, DHS also referred father for a psychological evaluation and counseling. DHS coordinated the evaluation, but it is unclear from the record whether DHS or father coordinated father's counseling. Father completed the evaluation, where he discussed his relationship with mother, and, at the time of the permanency hearing, he had been participating in counseling through the Veteran's Affairs (VA) office for a year.

Also pursuant to court order, DHS referred father to parent training. The training included more than 50 visits with M. The caseworker testified that during the visits, father had always been consistent, cooperative, and appropriate. The case worker reiterated that M has always known appellant as her father and calls him dad; he is dedicated to her well-being. During the visits they sit next to each other and watch videos together; he checks in often with her. The

caseworker observed that she is bonded with father; he is bonded to her. Father specified that no one ever gave him negative feedback about parenting time and always said "it was fantastic." Father emphasized his "very strong" bond with M: "She's as happy to see me as I am happy to see her."

During the permanency hearing, DHS focused its argument upon father's efforts to ameliorate the jurisdictional basis rather than DHS's reasonable efforts to assist father in that effort. DHS argued that father had not ameliorated the "chaos" in his relationship because he refused to end his relationship with mother. Father's caseworker had informally advised father to end that relationship and testified that father's failure to do so presented barriers to offering services to father. The caseworker testified:

"Q:  So for a parent that cannot leave an unsafe relationship, is that a parent that you're going to be looking at helping obtain housing or looking at any sort of in-home plan with?

"A:  If they were on their—if he were on his own it would be easier to try and make those steps.

"As long as he maintains a relationship with [mother], and it's not a criticism of her, I mean, I do know that she's got some significant mental health issues that impacts [M], but it is a concern for myself and for others."

Father responded that DHS did not provide evidence that it informed father he must end the relationship to get his child back, or how it assisted him in accomplishing that task. He argued that, although the caseworker had informally suggested separating from mother, no court order or letter of expectation told him that he must end his relationship with mother. Father also noted that he had completed every court-ordered task, including procuring safe and stable housing, and he began receiving a steady income via social security disability payments.

Additionally, father asserted that DHS had not met its threshold burden to prove that DHS provided reasonable efforts to assist father. Specifically, father argued that the only two DHS efforts that could have potentially addressed

father's "chaotic relationship" with mother were the referrals to parent training and to Womenspace, which DHS did not show was relevant to father's chaotic relationship. According to the caseworker, nearly every effort made by DHS, although related to helping father in a general sense, were typically provided in *every* case and were unrelated to father's chaotic relationship with mother.

The court ruled that "the agency made reasonable efforts for all parents," evidenced by all services and referrals by DHS, including but not limited to providing father with bus passes and referring father to Womenspace. Additionally, the court ruled that father's efforts were insufficient to ameliorate the jurisdictional basis because he prioritized his relationship with mother instead of utilizing DHS's suggested housing resources, and he had not provided credible evidence that he had obtained safe and stable housing. The court continued that, "considering everything on the record, having read the exhibits, including and emphasizing the psychological evaluation of the child, I do find it is in the child's best interest that the plan be now changed to adoption." The court then issued a permanency judgment memorializing its oral ruling and changed M's permanency plan from reunification to adoption. Father now appeals from that judgment.

A child becomes a ward of the court when the court must assert jurisdiction over the child "to protect the child's safety and to work with the child's family to correct the problems that gave rise to the court's exercise of jurisdiction." *Dept. of Human Services v. S. M.*, 355 Or 241, 245-46, 323 P3d 947 (2014) (citing ORS 419B.090(2)); ORS 419B.328(1). "While a child is a ward of the court, the court oversees the development and implementation of a permanency plan for the child." *Dept. of Human Services v. J. C.*, 365 Or 223, 226, 444 P3d 1098 (2019) (citing ORS 419B.476). "ORS chapter 419B provides that, if a ward has not been reunited with his or her family within 12 months after the ward came into the juvenile court's jurisdiction, the juvenile court will hold a 'permanency hearing' to determine an appropriate long-term path for the ward. ORS 419B.476." *S. M.*, 355 Or at 247.

At the permanency hearing, the juvenile court determines "whether it is appropriate for DHS to: (1) continue working towards reunification with the family; (2) place the child for adoption and petition for termination of parental rights; (3) refer the ward 'for establishment of legal guardianship'; or (4) place the ward 'in another planned permanent living arrangement.'" *Id.* (citing ORS 419B.476 (5)(b)).

Before the juvenile court may change a permanency plan from reunification to adoption, the court must determine that, under ORS 419B.476(2)(a), (1) DHS made reasonable efforts for the child to safely return home, and (2) despite those efforts, parents have not made sufficient progress to allow the child to safely return home. At issue here is only the first prong.

It is always the burden of DHS to prove by a preponderance of the evidence that its efforts to assist a parent in ameliorating the jurisdictional basis were reasonable. *Dept. of Human Services v. S. M. H.*, 283 Or App 295, 305, 388 P3d 1204 (2017) (internal citations omitted). "The particular circumstances of each case dictate the type and sufficiency of efforts that the state is required to make and whether the types of actions it has required parents to take are reasonable." *Dept. of Human Services v. T. R.*, 251 Or App 6, 13, 282 P3d 969 (2012) (internal citation omitted). Whether DHS has provided reasonable efforts should be evaluated "in view of the nature of the parent's problems." *Dept. of Human Services v. D. L. H.*, 251 Or App 787, 802, 284 P3d 1233 (2012), *rev den*, 353 Or 445 (2013). Thus, it is through the lens of the jurisdictional basis that we must analyze the reasonableness of DHS's efforts.

That task—to prove the reasonableness of its efforts—becomes more challenging when DHS chooses to allege and proceed upon a jurisdictional basis as amorphous and ill-defined as a "chaotic relationship." We note that the jurisdictional basis here, a "chaotic relationship" is not simply an interchangeable term for domestic violence. If the jurisdictional basis were domestic violence, we have addressed how such a jurisdictional basis remains child focused:

> "As a starting point, it is unnecessary to decide the complicated question raised by father's arguments as to what constitutes 'domestic violence.' We have never categorically defined domestic violence and need not do so now. *See, e.g.*, *State v. S. T. S.*, 236 Or App 646, 656 n 1, 238 P3d 53 (2010) (declining to decide, in juvenile dependency case involving physical violence, threats, breaking objects, and verbal abuse, whether verbal abuse 'standing alone' would create jurisdiction). That is so because using the term 'domestic violence' to describe conduct does not change the ultimate inquiry in a dependency case: whether violent or aggressive behavior by an adult in the home endangers the child's welfare. The focus must always be on the child."

*Dept. of Human Services v. J. J. B.*, 291 Or App 226, 233, 418 P3d 56 (2018) (internal citation omitted).

When, as here, the jurisdictional basis is a "chaotic relationship" it is more challenging to keep the appropriate child focus. The state has no authority to assert itself into every flawed human relationship—chaotic though it may be. Rather, the jurisdictional basis here must be interpreted to mean a chaotic relationship that, through actions by father "is of a nature or severity that creates a current threat of serious loss or injury to [the child] that is likely to be realized." *J. J. B.*, 291 Or App at 235 (footnote omitted). Accordingly, the services offered must be targeted not just to the chaotic relationship, but to how that specific chaotic relationship endangers the child's welfare.

Reasonable efforts to reunify a child with her parent focus on ameliorating the adjudicated bases for jurisdiction and give "parents a reasonable opportunity to demonstrate their ability to adjust their conduct and become minimally adequate parents." *S. M. H.*, 283 Or App at 306 (internal citations and quotation marks omitted). In making a reasonable efforts determination, a court "must consider not only the burdens that the state would shoulder in providing those services, but also what benefit might reasonably be expected to flow from them." *Dept. of Human Services v. M. K.*, 257 Or App 409, 416, 306 P3d 763 (2013).

DHS is not excused from making reasonable efforts to assist a parent because a caseworker believes that efforts are futile. Stated differently, a parent's prior choice not to

use DHS services does not excuse DHS from continuing to offer them. *Dept. of Human Services v. L. L. S.*, 290 Or App 132, 139, 413 P3d 1005 (2018) (internal citation omitted).

Here, although evidence in the record supports the trial court's finding that DHS offered a number of services to father, the record does not support the inference that those efforts were related to ameliorating the jurisdictional basis. According to the caseworker, nearly every effort made by DHS, although related to helping father in a general sense, were typically provided in every case and were unrelated to father's chaotic relationship with mother. The caseworker testified that the only services it provided to father that were related to the jurisdictional basis were referrals to parent training and Womenspace.

Specifically regarding Womenspace, although DHS provided pamphlets to father after it became clear that he was a domestic-violence victim, DHS provided little or no evidence concerning precisely what programming Womenspace offered, or how that programming served to ameliorate father's "chaotic relationship" or prevented that chaotic relationship from endangering the child. From that lack of evidence, the juvenile court could not reasonably infer that Womenspace has the capability to provide relevant services for father.

Additionally, DHS asserts that, given father's self-selection out of services, its efforts were reasonable. However, father's reluctance to utilize DHS services and instead use other services to accomplish his ordered tasks does not provide evidence that DHS's efforts were reasonable. Rather, father's decision to utilize services tailored to his needs speaks to father's initiative to resolve his own issues. Regardless of father's initiative, father's choice not to use DHS services does not excuse DHS from continuing to offer them or otherwise supporting father in alleviating the jurisdictional basis.

In conclusion, given the jurisdictional basis, DHS failed to show that it made reasonable efforts specifically tailored to the jurisdictional basis for father in light of the "nature of his problems." *D. L. H.*, 251 Or App at 802. We

acknowledge that M has been in the juvenile court's jurisdiction since December 2017, and a timely and appropriate long-term path for her is of utmost importance. Because the evidence is insufficient to reasonably infer that DHS provided relevant services to father, however, we must conclude that DHS did not meet its burden to prove that its efforts were reasonable. Accordingly, we reverse and remand.

Reversed and remanded.