*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

Argued and submitted August 16, reversed and remanded September 28, 2022

In the Matter of S. A. B.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

S. A. B.,
*Respondent,*

*v.*

A. M. D. B.,
*Appellant.*

Lane County Circuit Court
21JU00855; A178237

Bradley A. Cascagnette, Judge.

Tiffany C. Keast, Deputy Public Defender, argued the cause for appellant. Also on the brief was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Emily N. Snook, Assistant Attorney General, argued the cause for respondent Department of Human Services. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Ginger Fitch and Youth, Rights & Justice filed the brief for respondent S. A. B.

Before Tookey, Presiding Judge, and Lagesen, Chief Judge, and Joyce, Judge.

JOYCE, J.

Reversed and remanded.

**JOYCE, J.**

In this juvenile dependency case, father, who is incarcerated, appeals from a permanency judgment changing the case plan for his one-year-old daughter, S, from reunification to adoption.[1] Father argues that the juvenile court erred in finding that the Department of Human Services (DHS) made reasonable reunification efforts, as required by ORS 419B.476(2)(a). We review the juvenile court's findings of fact—what DHS did or did not do—for any evidence and review its conclusions of law—whether the historical facts constitute reasonable efforts—for legal error.[2] *Dept. of Human Services v. J. F. D.*, 255 Or App 742, 744, 298 P3d 653 (2013). Because we conclude that the juvenile court erred in its determination that DHS made reasonable efforts, we reverse and remand.

## FACTS

S was born in January 2021. DHS became involved with S's family immediately after she was born based on allegations of "substance use, mental health, sporadic prenatal care, and domestic violence." During its initial investigation, DHS scheduled three urinalyses (UAs) for father. Father did not attend any of the scheduled UAs. DHS also scheduled three meetings with father: a phone call facilitated by father's probation officer, a home visit with mother at maternal grandmother's residence, and a face-to-face meeting. Father did not attend the home visit.

On February 19, DHS filed a dependency petition and took S into protective custody, at which point father ceased all communication with DHS. DHS attempted to contact father through "texts, calls, talking to his P.O. and an e-mail" without success.

In April, the juvenile court entered a judgment asserting jurisdiction over S, identifying eight jurisdictional bases related to father:

- that father's domestically violent relationship presents a threat of harm to S;

---

[1] Mother is not a party to this appeal.

[2] Father has not requested *de novo* review, and we do not identify a basis for exercising our discretion to do so. ORAP 5.40(8).

- that father's pattern of impulsive, volatile and/or violent behavior presents a threat of harm to S;

- that father lacks the parenting skills, knowledge, and/or motivation necessary to safely parent S;

- that father's chaotic lifestyle and/or residential instability interfere with his ability to safely parent S;

- that father's mental health interferes with his ability to safely parent S;

- that father's pattern of criminal conduct and attendant consequences interfere with his ability to safely parent S;

- that father's substance abuse interferes with his ability to safely parent S; and

- that father exposes S to unsafe conditions and/or circumstances that present a threat of harm to S.

The juvenile court ordered father to participate in and successfully complete an approved parent training program, mental health assessment, counseling/mental health services, psychological evaluation, psycho-sexual evaluation, substance abuse evaluation, substance abuse treatment, and batterers' intervention counseling. The juvenile court also ordered father to participate in medication management with an approved provider, demonstrate a drug-free and violence-free lifestyle, maintain safe and stable housing, submit to drug testing as requested, comply with all terms and conditions of probation and/or post-prison supervision, and participate in services available to him while incarcerated.[3]

On May 19, after three months without contact, father reached out to DHS and expressed that he wanted to "get involved with the case," get into treatment, and start visitation with S. In response, DHS spoke with an Alcohol and Drug Specialist at Relief Nursery, who "added [father] to her list of people to contact." DHS also submitted an

---

[3] Father was not incarcerated when the trial court issued those orders, and the record does not reflect why the juvenile court included that condition in the jurisdictional order.

expedited visitation request for the following Monday. That visit never occurred because, on May 22, father was arrested for causing serious physical injury to another person.

Father was detained at the Lane County Jail for four months pending the resolution of the criminal case. During that time, DHS did not offer father any services because "there was nothing available through Lane County Jail at that time." On September 23, father was sentenced to 90 months prison after pleading guilty to first-degree assault and felon in possession of a firearm.[4] Father was transferred to Coffee Creek Correctional Facility (Coffee Creek) for intake and stayed there for approximately one month. DHS did not offer father any services during that time because father's counselor at Coffee Creek "made it clear that there was nothing available at that time, that we could ask the next prison[.]"

In October, father was transferred to Snake River Correctional Institution (Snake River). On November 1—six months after the juvenile court took jurisdiction over S— DHS sent father a letter notifying him that it was moving to terminate his parental rights. On November 23, DHS spoke to father (over the phone) for the first time since he had been transferred to Snake River. DHS did not speak to father's Snake River counselor or ask whether services were available at the institution until January 3, 2022, three months after father had been transferred (although it appears that the caseworker had called twice and left a message). Father's Snake River counselor told DHS that "nothing would be available to [father] until six months 'til his release, at a minim[um] security facility." DHS also contacted father's DHS-assigned courtesy worker, who reported that there were no services available to father at that time.

Between May, when father was first incarcerated, and October, DHS scheduled two video visits with S (September 8 and September 12), both of which father attended. Following his transfer to Snake River, DHS cancelled the first two visits because of an issue with S's foster

---

[4] DHS never amended the jurisdictional petition to add father's incarceration status as a jurisdictional basis.

parents and because S was sick. The next six visits were cancelled by the prison. The prison told DHS that the cancellations were because father was "having trouble adjusting to his first year at prison[.]" Yet other visits did not happen because of technical or logistical issue and because father was in COVID-19 quarantine. At the time of the permanency hearing, father had not had a successful visit with S for approximately five months.

On February 17, 2022, the juvenile court held a permanency hearing. The witnesses were father and the DHS caseworker. The caseworker testified that, beyond inquiring about available services or treatment providers through the Lane County Jail and DOC, she had not made any efforts to arrange for the services that the juvenile court had ordered father to participate in. Father testified that he wanted to engage in services, but that no one from DHS had spoken to him about setting up any services.

In his closing statement, father objected to any change in S's case plan and asked that the juvenile court find that DHS had not made reasonable efforts towards reunification. Father noted that the evidence showed that DHS had not offered him any services since his incarceration. Father argued that DHS was not excused from making reasonable efforts just because he was incarcerated and compared DHS's lack of efforts in this case to those in *Dept. of Human Services v. K. G. T.*, 306 Or App 368, 473 P3d 131 (2020). The juvenile court asked father "what is— 'reasonable efforts'—your client's not going to be released for five years. What does it matter whether there were reasonable efforts or not? *** Because he's where he's placed himself." Father responded:

> "because there are other permanency options other than adoption, providing those services and providing him the opportunity to show that he can engage in those services and that he's (indiscernible) become a better parent— if another permanency option was achieved, then in the future, if he were allowed to have contact with his child, he would have benefitted from those services and could be a safe—or, safe role in his child's life at that point because of the services that were offered to him."

After taking the matter under advisement, the juvenile court concluded that DHS had made reasonable efforts towards reunification and changed S's case plan from reunification to adoption. In its written judgment, the only "service" that the juvenile court marked as DHS having provided to father was "[a]lcohol & drug evaluation or treatment[.]" The juvenile court found that "[n]o services were available for father in the Lane County Jail"; "[father] was unable to obtain services or have visitation due to [DOC] policies" while at Coffee Creek; and that DHS "was informed that due to [father's] sentence, no services are available to him until the [six] months prior to his release[.]" The juvenile court further found that "DHS attempted to set up numerous visitations through video, without success." The juvenile court ultimately concluded that "[DHS] has taken reasonable steps to provide services and visitation to Father, but without success given the confines of Father's custody status."

## ANALYSIS

On appeal, father contends that the juvenile court erred in ruling that DHS's reunification efforts were reasonable and in changing S's case plan from reunification to adoption. Father admits that he declined services during DHS's initial investigation, but he maintains that DHS failed to make reasonable efforts thereafter. We agree.

It is the policy of the State of Oregon to offer "appropriate reunification services" to parents when a child has entered protective custody and a dependency petition has been filed. ORS 419B.090(5). DHS generally is required to make "reasonable efforts" to make possible a child's safe return home while the dependency case is pending. ORS 419B.340(1); ORS 419B.476(2)(a). Thus, before a juvenile court can change the case plan from reunification to adoption, it must determine "whether [DHS] has made reasonable efforts *** to make it possible for the ward to safely return home and whether the parent has made sufficient progress to make it possible for the ward to safely return home." ORS 419B.476(2)(a).

DHS's efforts qualify as reasonable "if and only if those efforts supply a parent with a reasonable opportunity

to demonstrate [their] ability to adjust [their] conduct and become a minimally adequate parent." *Dept. of Human Services v. L. L. S.*, 290 Or App 132, 142, 413 P3d 1005 (2018) (internal quotation marks and brackets omitted). Additionally, the efforts "must go on long enough to allow for a meaningful assessment of whether parents are making sufficient progress to permit reunification." *Dept. of Human Services v. W. M.*, 310 Or App 594, 598-99, 485 P3d 316 (2021). Although we consider DHS's efforts over the life of the dependency case, we focus on the period of time leading up to the permanency hearing. *Dept. of Human Services v. M. W.*, 319 Or App 81, 84, 509 P3d 752 (2022). It is DHS's burden "to prove by a preponderance of the evidence that its efforts to assist a parent in ameliorating the jurisdictional basis were reasonable." *Dept. of Human Services v. D. M. R.*, 301 Or App 436, 443, 455 P3d 599 (2019) (citing *Dept. of Human Services v. S. M. H.*, 283 Or App 295, 305, 388 P3d 1204 (2017)).

We have previously recognized that dependency cases involving incarcerated parents "present unique challenges." *Dept. of Human Services v. S. W.*, 267 Or App 277, 286, 340 P3d 675 (2014). However, even though DHS's ability to "communicate with a parent, monitor a parent's engagement in services, and facilitate visits with the child may be severely tested when a parent is incarcerated[,]" the mere fact that a parent is incarcerated "does not excuse DHS from making the reasonable efforts required by statute." *Id.*; *see also K. G. T.*, 306 Or App at 375-76. While the circumstances and duration of a parent's incarceration may well bear significantly on whether a parent is able to make "sufficient progress" as required by ORS 419B.476(2)(a), "those circumstances alone do not absolve DHS of its separate obligation, over the life of the case, to make reasonable efforts to give the parent the opportunity to ameliorate the bases for jurisdiction." *Dept. of Human Services v. C. L. H.*, 283 Or App 313, 330, 388 P3d 1214 (2017).

Moreover, where DHS fails to provide services because of systemic or institutional barriers to the provision of those services, the juvenile court must conduct "something resembling a cost-benefit analysis, at least when * * *

the agency itself has deemed th[ose] service[s] to be 'key' to the reunification plan." *Dept. of Human Services v. M. K.*, 257 Or App 409, 417-18, 306 P3d 763 (2013); *see also K. G. T.*, 306 Or App at 377-78. In conducting that analysis, the juvenile court must weigh the cost of providing the service in question—which DHS bears the burden of establishing— with the benefit of providing the service in question, *i.e.* "the importance of the service that was not provided to the case plan and the extent to which that service was capable of ameliorating the jurisdictional bases." *C. L. H.*, 283 Or App at 328-31; *K. G. T.*, 306 Or App at 381.

Under those legal standards, the juvenile court here erred in concluding that DHS had engaged in reasonable efforts to reunify S with father. To be sure, DHS offered father a number of services at the outset of the case, and father refused to participate in them.[5] Although we take that into consideration, we emphasize the period of time leading up to the permanency hearing. *M. W.*, 319 Or App at 84. In that time frame, father was incarcerated. By its own admission, DHS's efforts consisted of contacting father's prison counselors, contacting a courtesy worker, and arranging video visits. Both the counselors and courtesy worker told DHS that no services were available for father. As a practical matter, then, the only service DHS provided was visitation.[6] It did nothing to provide the many other services that were aimed at resolving the jurisdictional bases and that the juvenile court had ordered father to participate in. DHS's efforts simply cannot be deemed reasonable. *See L. L. S.*, 290 Or App at 142.

In that respect, our decision in *C. L. H.* is instructive. There, the father failed to participate in services for the

---

[5] Although not dispositive to our decision, we note that there is no support in the record for the juvenile court's finding that DHS provided father with "[a]lcohol & drug evaluation or treatment." At most, the record supports a finding that DHS submitted a referral for drug and alcohol services. A referral alone, without resulting service, would not allow father to demonstrate improvement to his substance abuse or put the juvenile court in a position to evaluate father's progress in addressing that jurisdictional basis. *See K. G. T.*, 306 Or App at 383.

[6] DHS argues that father's own conduct—namely, his failure to adjust to prison life—prevented father from attending several of the visits. The record does suggest that father missed as many as six visits due to a revocation of privileges. But that does not alter our conclusion that simply offering visits, and nothing more, does not amount to reasonable efforts.

first six months of the child's time in foster care. *C. L. H.*, 283 Or App at 317. The father was then incarcerated. *Id.* A year into the father's incarceration, the juvenile court held a permanency hearing. *Id.* at 318. At that hearing, DHS sought to change the case plan from reunification to adoption. *Id.* The DHS caseworker testified that the father's incarceration status had been an impediment to DHS providing services and that the prison programs were not of the same quality and appropriateness as those outside of the prison. *Id.* at 319.

We reversed the juvenile court's judgment and found that DHS had not meaningfully attempted to provide services to help the father ameliorate the bases for jurisdiction. *Id.* at 331. That held true notwithstanding the fact that the father had not participated in services early in the case: There was no "body of evidence derived from an extended period of time demonstrating that there would be little 'benefit' to DHS providing additional services to [him]." *Id.*; *cf. S. W.*, 267 Or App at 294-95 ("[c]onsidering the totality of the circumstances, including the department's early efforts, father's pattern of conduct, the specific circumstances of his incarceration, the potential benefit of the additional efforts that father contends should have been made, and the needs of [the child]," the juvenile court did not err in its reasonable-efforts determination).

The same is true here. Although father initially refused to participate in services prior to his incarceration, once incarcerated, and with father expressing interest in available services, DHS did not offer the services that were necessary to assist father in ameliorating the jurisdictional bases.[7]

To the extent that DHS relies on the fact that services were not available to father in prison, that argument fails. Where institutional barriers exist to providing services, DHS must, at a minimum, "explore [] options beyond

---

[7] At oral argument, counsel for DHS asserted that it would be impractical to offer father all of the services that the juvenile court had ordered at once, because to do so would overwhelm father. Instead, DHS tried to offer services in a way that allowed him to achieve incremental success. The difficulty with that argument is that other than visitations, DHS did not offer *any* of the ordered services to father.

whatever happen[s] to be available through DOC[.]" *K. G. T.*, 306 Or App at 384. There is no evidence in this record that DHS did that.

We thus conclude that the juvenile court erred in concluding that DHS made reasonable efforts to reunify S with father and concomitantly erred in changing the case plan away from reunification.

Reversed and remanded.