Argued and submitted September 7, reversed and remanded October 25, 2023

In the Matter of D. A. M.,
aka B. B. M., a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. L. M.,
*Appellant.*

Linn County Circuit Court
21JU02550; A180845

538 P3d 914

In this juvenile dependency case, mother appeals from a judgment changing the permanency plan for her 20-month-old son, D, from reunification to adoption. Mother, who is incarcerated, challenges the juvenile court's determination that the Department of Human Services (DHS) made reasonable efforts toward reunification. *Held*: DHS did not establish that providing mother with a substance abuse evaluation and treatment while she was incarcerated was truly not possible because it is reasonable to infer from this record that other options may have been possible but were not explored. DHS was therefore required to establish that the difficulties and cost of providing mother with that service outweighed the potential benefits, and it failed to do so on this record, given that a substance abuse evaluation and treatment is critical to the case plan and goes directly to ameliorating the jurisdictional bases.

Reversed and remanded.

Heidi M. Sternhagen, Judge pro tempore.

Kyle Sessions, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Stacy M. Chaffin, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Reversed and remanded.

ORTEGA, P. J.

In this juvenile dependency case, mother appeals from a judgment changing the permanency plan for her 20-month-old son, D, from reunification to adoption. Mother, who is incarcerated, challenges the juvenile court's determination that the Department of Human Services (DHS) made reasonable efforts toward reunification. We agree with mother that the juvenile court erred and, accordingly, reverse.[1]

## FACTS

In the absence of *de novo* review, which is neither requested nor warranted in this case, we are bound by the juvenile court's factual findings as to what efforts DHS has made, so long as there is any evidence in the record to support them. *Dept. of Human Services v. C. H.*, 327 Or App 61, 63, 533 P3d 1112 (2023). We draw the relevant facts from the juvenile court's letter opinion and from the record.

Mother gave birth to D in May 2021 at home, and they were transported by ambulance to the hospital. At the hospital, mother admitted that she had used heroin earlier that day and had used heroin and methamphetamine throughout her pregnancy. Mother tested positive for methamphetamine, amphetamine, and heroin, and D's meconium tested positive for those substances as well as for codeine. Although D did not show signs of withdrawal upon first arriving at the hospital, he later began having severe withdrawal symptoms that required the use of morphine to manage.

DHS met with mother at the hospital and made an initial in-home safety plan with her, which included offering mother addiction recovery services. However, mother left D at the hospital the next day, and hospital staff were unable to contact her or make medical decisions on D's behalf. DHS took protective custody of D when he was four days old.

Despite various and repeated attempts to locate and contact mother, DHS was unable to do so until she was

---

[1] Our conclusion that the juvenile court erred in determining that DHS made reasonable efforts obviates the need to address mother's other assignments of error.

arrested in mid-July 2021 on outstanding probation warrants.[2] In the few weeks that mother was incarcerated at Linn County jail awaiting sentencing on her open criminal cases, DHS met with mother, arranged for visitation with D, and twice discussed mother's desire to engage in addiction recovery services. In August 2021, mother was sentenced to a term of imprisonment and transported to Coffee Creek Correctional Facility to serve her sentence.

In November 2021, the juvenile court took jurisdiction over D on two bases: "mother's substance abuse has led to her incarceration, which places the child at risk of harm" and "[m]other is incarcerated and unavailable to parent her child." The court ordered mother to engage in a safety plan and a referral for substance abuse evaluation and recommended treatment, and it ordered DHS to make those referrals and offer those services reasonably necessary to permit mother to achieve reunification.

Throughout mother's incarceration, DHS had facilitated weekly video visits and monthly in-person visits with D, and DHS met with mother monthly on the phone or in person to provide updates and pictures of D and to discuss mother's case and the status of services mother could engage in while incarcerated.

From August 2021 to September 2022, mother was housed in medium security at Coffee Creek. During that time, DHS twice provided mother with letters of expectation to inform her of the services and supports DHS was offering. The letters explained that mother needed to "participate in drug and alcohol treatment at the level deemed appropriate in her completed assessment" and "follow all recommendations from her treatment counselor and/or []DHS" in addition to "demonstrat[ing] sobriety and a long-term commitment to living a drug free lifestyle." DHS also twice provided mother with action agreements that outlined "specific actions" mother should take to address identified safety threats, including that mother "complete an [alcohol and

---

[2] A year earlier, mother had entered an agreement with the state to defer further proceedings in five open criminal cases involving various drug and property crimes, pending her completion of the Linn County Drug Court Program. Mother failed to engage in drug court.

drug] assessment through an approved provider," "follow the recommendations of the treatment provider," and "maintain a drug free lifestyle." On multiple occasions, DHS spoke with mother's prison counselor to inquire about services available to mother while in prison. Each time, the counselor said that, due to the pandemic, the Department of Corrections (DOC) was not offering alcohol and drug counseling to adults in custody and would not allow DHS to bring in outside providers to offer drug and alcohol services to mother.

In September 2022, mother was transferred to minimum security. After the move, DHS twice contacted mother's new prison counselor to discuss mother's access to alternative incarceration programs, and the counselor said that, due to her county detainers,[3] mother was not eligible under DOC policy to participate in DOC-provided drug treatment programs until six months prior to her release in February 2024. DHS did not inquire about whether DOC would allow DHS to bring in outside providers to offer drug and alcohol services to mother in minimum security.

In January 2023, the juvenile court held a permanency hearing for D, who by that time had been in substitute care for 20 months. Mother and the DHS caseworker testified consistently with the facts described above. Mother also called as a witness an attorney who was working *pro bono* to lift her county detainers so that she would be eligible to participate in DOC programs.

After the hearing, the court changed D's permanency plan from reunification to adoption and entered a permanency judgment memorializing that ruling. The court concluded that, "[u]nder the totality of the circumstances, including the efforts prior [to] and after mother's incarceration" and considering the length of mother's incarceration, "[]DHS has provided reasonable efforts for the duration of this case." As to substance abuse services, the court found that DHS "has communicated with DOC about services available to mother by DOC as well as sought to bring in outside providers to offer drug and alcohol services/treatment." The court acknowledged that DHS "could have been more

---

[3] In two of the five open cases, mother was sentenced to 30-day jail sentences to be served consecutively to her prison sentence.

active in communicating with [m]other's prison counselor between September 2022 and January 2023 regarding services," but that DHS "continue[d] to communicate with mother and inquire about services that were available to her once she was in minimum security." As to the safety plan, the court found that DHS originally had "tried to engage in a home safety plan with mother," but she "did not engage."

## DISCUSSION

A foundational policy of Oregon's juvenile dependency system is "to offer appropriate reunification services to parents" of children who have become wards of the court to allow parents "the opportunity to adjust their circumstances, conduct or conditions to make it possible for the child to safely return home within a reasonable time." ORS 419B.090(5). Accordingly, when a child's permanency plan is reunification, the juvenile court must determine at each permanency hearing "whether [DHS] has made reasonable efforts *** to make it possible for the ward to safely return home and whether the parent has made sufficient progress to make it possible for the ward to safely return home." ORS 419B.476(2)(a). To change a child's permanency plan away from reunification, the juvenile court must first determine that DHS has proved by a preponderance of the evidence (1) that DHS has made "reasonable efforts" to reunify the family, and (2) that, notwithstanding those efforts, the parent has not made sufficient progress to permit reunification. *Dept. of Human Services v. K. G. T.*, 306 Or App 368, 374, 473 P3d 131 (2020).

Whether DHS has made "reasonable efforts" is a legal conclusion that we review for legal error. *C. H.*, 327 Or App at 63. "Reasonable efforts to reunify a child with [their] parent focus on ameliorating the adjudicated bases for jurisdiction and give parents a reasonable opportunity to demonstrate their ability to adjust their conduct and become minimally adequate parents." *Dept. of Human Services v. D. M. R.*, 301 Or App 436, 444, 455 P3d 599 (2019) (internal quotation marks omitted). "DHS's efforts are evaluated over the entire duration of the case, with an emphasis on a period before the hearing sufficient in length to afford a good opportunity to assess parental progress." *Dept. of Human Services*

*v. S. M. H.*, 283 Or App 295, 306, 388 P3d 1204 (2017) (internal quotation marks omitted).

"It is well established that DHS is not excused from making reasonable efforts toward reunification simply because a parent is incarcerated." *Dept. of Human Services v. L. L. S.*, 290 Or App 132, 139, 413 P3d 1005 (2018). The length and circumstances of incarceration may be properly considered as part of the totality of the circumstances in assessing the reasonableness of DHS's efforts toward reunification. *Dept. of Human Services v. C. L. H.*, 283 Or App 313, 329, 388 P3d 1214 (2017). However, although the "circumstances and duration of a parent's incarceration may well bear significantly on whether a parent is able to make 'sufficient progress' as required by ORS 419B.476(2)(a)," a parent's incarceration does "not absolve DHS of its separate obligation, over the life of the case, to make reasonable efforts to give the parent the opportunity to ameliorate the bases for jurisdiction." *Id.* at 330.

Here, it is undisputed that DHS has never provided mother with the two court-ordered services aimed to ameliorate the jurisdictional bases: a substance abuse evaluation and a safety plan. The parties disagree about whether DHS's reunification efforts were nonetheless reasonable, and that disagreement largely turns on their different readings of our recent decision in *K. G. T.* We therefore turn to that case.

In *K. G. T.*, the father, who had been incarcerated for a year before the permanency hearing and would not be released for at least another seven months after it, needed substance abuse treatment, parent training, and mental health services to address the jurisdictional bases. 306 Or App at 371-73. DHS determined that DOC did not have any of those services available to the father, but never considered trying to arrange services itself, instead taking the view that it could provide those services to the father once he was released from prison. *Id.* at 382. We concluded that DHS did not provide sufficient evidence to meet its burden to show that it made reasonable efforts toward reunification. *Id.* at 384-85.

In reaching that conclusion, we reaffirmed that, "when a parent contends that DHS's efforts have not been

reasonable because the agency has declined to provide a particular service, the court's 'reasonable efforts' determination should include something resembling a cost-benefit analysis, at least when \*\*\* the agency itself has deemed that service to be 'key' to the reunification plan." *Id.* at 377 (internal quotation marks omitted). We also considered "some of our existing precedent involving incarcerated parents" and discerned from that precedent

> "that DHS is not required to do the impossible. That is, if it is truly not possible to provide a particular service to a particular parent, the 'cost' necessarily outweighs the benefit, no matter how great the benefit might be. But DHS must show that it is truly not possible. Otherwise, if providing a needed service is possible—albeit perhaps expensive or inconvenient—the court must engage in a cost-benefit-like analysis that is fundamentally tied to the goal of providing the parent, over the life of the case, with a reasonable opportunity to demonstrate improvement, if not ameliorate the jurisdictional bases. It is for DHS to establish the cost."

*Id.* at 378, 381 (footnote and internal citation omitted).

Applying that standard, we explained that DHS had failed to provide any evidence to the juvenile court regarding the cost of providing the father with DHS-approved services, "in person or otherwise," while he was incarcerated, and that both DHS and the juvenile court gave "little, if any, consideration to the benefit of the services that were not provided" to the father. *Id.* at 381-82. Further, because it was undisputed that the services that were not provided were "needed," were "critical to the case plan," and went "directly to ameliorating the jurisdictional bases," we concluded that DHS did not meet its burden to prove that it had given the father a reasonable opportunity to demonstrate his ability to adjust his conduct and become a minimally adequate parent. *Id.* at 382-85.

With that understanding of the applicable legal standard in mind, we return to the parties' arguments here. As to the substance abuse evaluation, mother argues that DHS's efforts were not reasonable because, even though she failed to engage in the treatment DHS offered to her in the several weeks she was in Linn County jail, DHS failed to

provide her a substance abuse evaluation or treatment in the nearly 17 months that she was in prison. Mother argues that DHS cannot rely on institutional barriers to excuse that failure and that, in any event, DHS did not inquire into the possibility of bringing in an outside evaluator in the five months leading up to the dependency hearing, after mother was moved to minimum security.

DHS responds that its reunification efforts were reasonable. As to the substance abuse evaluation, DHS points out that it made multiple attempts to provide mother with drug and alcohol services, before and after she was incarcerated. In DHS's view, *K. G. T.* stands for the proposition that, "[w]here institutional barriers exist to providing services, DHS must at a minimum explore options beyond whatever happened to be available through DOC," and, here, "DHS did just that." DHS suggests that it met its burden to establish that providing mother with a substance abuse evaluation and treatment was impossible, because mother's prison counselor repeatedly advised DHS that it was not permitted to send providers into the prison, and DHS continued to follow up with mother and her counselor to determine what services could be provided to her. DHS does not dispute that it did not inquire whether DOC would allow DHS to bring in an outside provider after mother moved to minimum security. But DHS argues that that failure does not render all of its efforts for the entirety of the case unreasonable, given its ongoing coordination with mother and her new prison counselor about the services that were available to her through DOC and given that, in DHS's view, a substance abuse evaluation "would provide relatively little benefit to ameliorating the bases for jurisdiction" because mother is "a long-time drug user" who has "three other children that she has not parented for approximately four years due to her drug use," and "[t]he services needed to support her sobriety while incarcerated may be different than what is needed to support her sobriety in the community." Finally, as to the safety plan, DHS argues that it created an initial in-home safety plan that could not be implemented because mother abandoned D at the hospital and that it "maintained an ongoing safety plan" with mother. DHS acknowledges that it did not provide mother with a copy of the ongoing safety plan, but

argues that mother's caseworker discussed the safety plan with her and provided mother with action agreements and letters of expectation "that contained the [same] categories of information included in a safety plan."

As an initial matter, we conclude that DHS has not established that providing mother with a substance abuse evaluation and treatment while she was incarcerated was "truly not possible," and DHS therefore was required to establish that the cost of providing that service outweighed the potential benefits. *K. G. T.*, 306 Or App at 381. To be sure, in *K. G. T.*, DHS failed to even consider providing services to the father during his incarceration when the necessary services were not available through DOC. *Id.* at 382. Here, by contrast, DHS apparently considered one alternative to DOC-provided services—sending an outside provider into the prison to conduct an evaluation—and repeatedly sought DOC's permission to pursue that alternative. But the record here does not establish that sending an outside provider into the prison was the only or necessary means to provide mother with a substance abuse evaluation while incarcerated. It is reasonable to infer from this record that other options may have been possible, such as an evaluation conducted over the telephone, via mail or email correspondence, or by means of a remote video meeting.[4] Indeed, mother's caseworker regularly met with mother over the telephone, and DHS facilitated weekly video visits with D. Further, although we acknowledge that there may be a qualitative difference between an in-person evaluation and one conducted by other than in-person means, DHS did not develop a record on that point or present evidence that an in-person substance abuse evaluation was necessary for mother to receive the type of treatment required to become

---

[4] At oral argument, counsel for DHS suggested that mother did not argue to the juvenile court that other alternative means to provide her with an assessment may have been available, and that mother had raised that argument for the first time in her reply brief on appeal. That argument is not well taken. First, it misallocates the burden of proof. *See Dept. of Human Services v. M. C. C.*, 303 Or App 372, 383, 463 P3d 592 (2020) (An "incarcerated parent is not charged with the burden of finding solutions to institutional barriers"). Second, mother in fact argued to the juvenile court that "there were no additional efforts made to figure out if treatment could be provided to her in some other way aside from asking if they could bring in someone to do the assessment" and that the pandemic has demonstrated that "a lot of things can be done remotely," including treatment.

a minimally adequate parent or to demonstrate progress in ameliorating the jurisdictional bases. *Cf. Dept. of Human Services v. W. M.*, 310 Or App 594, 599, 485 P3d 316 (2021) (DHS failed to provide parents with a reasonable opportunity to address the jurisdictional bases where there was evidence that the parents needed "in-person, hands-on work" with a professional and the child to learn the skills to manage the child's serious and complicated feeding disorder and such services were unavailable due to the pandemic).

In *K. G. T.*, DHS's "fail[ure] to explore any options beyond whatever happened to be available through DOC" made it "impossible to know what other options might exist or what they would cost" and therefore "impossible to know whether DHS's efforts were reasonable or not" under the applicable cost-benefit analysis. 306 Or App at 384. The same is true here. DHS's failure to explore any options aside from the one that it was repeatedly told was not actually an option has made it impossible to know what other options might exist or what they would cost. Without such a record, it is impossible to know whether DHS's efforts were reasonable or not.

We also reject DHS's argument that providing mother with a substance abuse evaluation would have little benefit in light of mother's past drug use, her length of incarceration, and the obstacles she may likely face upon release from prison. We have explained that "an assessment of the 'benefit' of a particular service does not turn upon whether that service will ultimately make reunification possible." *C. L. H.*, 283 Or App at 329. Rather, "the juvenile court must consider the importance of the service that was not provided to the case plan and the extent to which that service was capable of ameliorating the jurisdictional bases." *Id.* at 328. Although both of the jurisdictional bases here arise from mother's incarceration, it is undisputed that mother's substance abuse is the primary reason that mother is incarcerated. Accordingly, substance abuse treatment is critical to the case plan and goes directly to ameliorating the jurisdictional bases. Providing mother with a substance abuse evaluation and treatment services would give her an opportunity to make progress on the central issue in this

case, and it would put the juvenile court in the position to evaluate mother's progress toward the reunification goals in light of her other circumstances.[5]

Reversed and remanded.

---

[5] Because we conclude that DHS did not meet its burden to establish that its efforts were reasonable given its failure to provide mother with a substance abuse evaluation and treatment, we need not address the safety plan.