No. 918          October 22, 2025          375

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of H. F. B. P.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

T. R. P.,
*Appellant.*

Klamath County Circuit Court
24JU01222; A186611

Stephen R. Hedlund, Judge.

Argued and submitted August 28, 2025.

Gabe Newland, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Oregon Public Defense Commission.

Jon Zunkel-deCoursey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, Jacquot, Judge, and O'Connor, Judge.

O'CONNOR, J.

Affirmed.

**O'CONNOR, J.**

Father appeals from a juvenile court judgment changing the permanency plan for his daughter, H, from reunification to adoption. In a combined argument, father raises three assignments of error. He contends first that the juvenile court erred when it determined that the Oregon Department of Human Services' (ODHS) reunification efforts were reasonable. Second, he argues that the juvenile court erred when it determined that father's progress towards reunification was insufficient. In his final assignment of error, father argues that the juvenile court erred when it changed the permanency plan from reunification to adoption. We conclude that the juvenile court did not err, and we affirm.

Father has not requested *de novo* review, and this is not an exceptional case that would justify *de novo* review. *Dept. of Human Services v. N. S.*, 246 Or App 341, 344, 265 P3d 792 (2011), *rev den*, 351 Or 586 (2012); ORAP 5.40(8) (c) (limiting *de novo* review to "exceptional cases"); *see* ORS 19.415(3) (providing that we have discretion to exercise *de novo* review in "an equitable action or proceeding other than an appeal from a judgment in a proceeding for the termination of parental rights").

"A juvenile court's determinations that [O]DHS has made reasonable efforts and that a parent has made insufficient progress toward reunification are legal conclusions that we review for errors of law." *Dept. of Human Services v. J. J.*, 340 Or App 238, 240, 570 P3d 300, *rev den*, 374 Or 372 (2025). Likewise, we review for legal error "[w]hether a juvenile court erred by relying on facts extrinsic to a jurisdictional judgment." *Dept. of Human Services v. T. L.*, 287 Or App 753, 755, 403 P3d 488 (2017). We are "bound by the juvenile court's factual findings as to what efforts [O]DHS has made, so long as there is any evidence in the record to support them." *Dept. of Human Services v. J. L. M.*, 328 Or App 722, 723, 538 P3d 914 (2023). "When doing so, we review the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the juvenile court's determination and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *T. L.*, 287 Or App at 755.

At a permanency hearing, ODHS bears the burden to prove that the facts support a change in the child's permanency plan. *Dept. of Human Services v. C. H.*, 373 Or 26, 46, 559 P3d 395 (2024). To order a change in the plan, the juvenile court must determine, by a preponderance of the evidence, that "[O]DHS has made reasonable efforts * * * to make it possible for the ward to safely return home and whether the parent has made sufficient progress to make it possible for the ward to return safely home." *Id.* (ellipsis in original; internal quotation marks omitted).

ODHS contends that father's first assignment of error is not preserved. Assuming, without deciding, that father preserved the first assignment of error, we affirm the juvenile court's ruling on the merits.

"When determining whether [O]DHS made reasonable efforts under ORS 419B.476(2)(a), we must evaluate [O]DHS's efforts 'in light of the bases for jurisdiction identified in the juvenile court's judgment.'" *Dept. of Human Services v. H. K. R.*, 340 Or App 179, 183, 569 P3d 1023 (2025) (quoting *C. H.*, 373 Or at 50). We evaluate whether, "looking at the totality of circumstances, 'the agency has taken appropriate steps under the circumstances to give parents a full and fair opportunity to remediate the bases for jurisdiction to become at least minimally adequate parents.'" *Id.* (same). Although the reasonable efforts inquiry is "primarily directed" at ODHS's conduct instead of the parent's, "a parent's failure to cooperate can obviously hamper [O]DHS's efforts;" thus, in assessing the reasonableness of ODHS's efforts, "a parent's cooperation is relevant." *C. H.*, 373 Or at 58.

A juvenile court must hold a permanency hearing no later than 12 months after it asserts jurisdiction. ORS 419B.470(2). Here, the juvenile court held the permanency hearing approximately nine months after it asserted jurisdiction. The parties referred to the hearing as "early," implying that the juvenile court typically held permanency hearings closer to the 12-month mark.

The juvenile court asserted jurisdiction on two bases related to father.[1] One basis was father's "current substance

---

[1] Mother and father both appeared in the juvenile court, and the record established they lived together. Mother is not a party to this appeal.

abuse problem and history of substance abuse that has not been ameliorated by previous services." The other basis was that father "does not understand the needs of the child and lacks the parenting skills necessary to adequately and appropriately parent and protect the child." At the conclusion of the permanency hearing, the juvenile court concluded that ODHS had made reasonable efforts. The juvenile court found that mother and father failed to take advantage of services offered by ODHS. The parents' "lack of contact" and their failure to communicate when they moved from Klamath Falls to Jackson County caused their inability to take advantage of services offered by ODHS, the juvenile court found. Additionally, it found that father had not signed a release of information with ODHS, despite ODHS's attempts to obtain it, which would have allowed ODHS to refer him to inpatient treatment during the first nine months. In response to father's argument that the juvenile court should grant him three more months to access services because of the "early" hearing, the juvenile court explained that it would not do so in this case because of father's "past history," which included substance abuse and repeatedly failing to access services in a dependency case involving another child, which ultimately ended with a court in another state terminating father's parental rights in that child.

The juvenile court did not err. The evidence, viewed in the light most favorable to the juvenile court's decision, established that ODHS made reasonable efforts to make it possible for the child to return to father's custody. ODHS's efforts were unsuccessful because father did not cooperate with ODHS. The fact that father did not access the services offered by ODHS does not render ODHS's effort unreasonable. *C. H.*, 373 Or at 58.

Father argues on appeal that ODHS's efforts were not reasonable because father had not yet attempted inpatient treatment for what appears to be a long-standing substance abuse disorder. As part of that argument, father argues that the "early" permanency hearing shows that ODHS's efforts were unreasonable because ODHS should have allowed him three additional months to enter inpatient treatment. We disagree.

We recognize that people with a substance abuse disorder might need multiple attempts at treatment and might need inpatient treatment to adequately treat the disorder. On this record, however, the evidence shows that ODHS wanted to help father access inpatient treatment. Father, however, impeded ODHS's efforts by failing to follow through with ODHS for the first nine months of the case. And the juvenile court concluded that it would be unreasonable to wait another three months to see if father would access services, including inpatient treatment, because of father's lengthy history of failing to access services in dependency proceedings. The juvenile court did not err when it relied on that evidence to conclude that ODHS's efforts up to that point had given father a full and fair opportunity to remediate the bases for jurisdiction.

In father's second assignment of error, he argues that the juvenile court erred when it determined that his progress was insufficient. Father does not argue that he made sufficient progress under the circumstances. Instead, he argues that because ODHS's efforts were not reasonable, the juvenile court also erred when it determined he did not make sufficient progress. We rejected a similar argument in *J. J.*, 340 Or App at 244 (The father's argument was "[b]ecause the department failed to prove that its reunification efforts qualified as reasonable, it necessarily failed to prove that *** father failed to make sufficient progress"). Because we conclude that the department's efforts were reasonable, father's second assignment of error provides no basis for reversal for the same reasons.

We turn to father's third assignment of error. Father argues that the juvenile court erred in ordering a change in the permanency plan from reunification to adoption, contending that the juvenile court impermissibly relied on his "past history" of termination of his parental rights to another child as the legal basis to change H's permanency plan. ODHS introduced evidence at the hearing that in the parents' previous termination proceedings, they demonstrated similar disengaged behavior:

"[T]his seems to be their cycle. With our [termination] in California, this is exactly what happened. That child

waited in foster care. Parents didn't engage, weren't motivated to get going in services."

In its closing argument, ODHS observed that this case was in a worse position than it was at the beginning "because the parents aren't even visiting at this point." It argued that there was no sense in

"waiting any longer, it's time to change the plan to adoption. It'd be different if they were engaged. We see cases all the time where the parents are engaged; maybe not perfect, maybe not doing everything they need to do, but they're at least trying. * * * [B]ut here, the—the efforts [have] just simply been de minimus."

However, ODHS also encouraged the parents in front of the juvenile court to not give up, engage in services, and get into inpatient treatment because "this is not the end of the line if—if Your Honor changes the plan. There's still time for these parents to do what they need to do."

In father's closing argument, he told the juvenile court that immediately following the hearing, he would go to ODHS to sign the required release of information so ODHS could refer him to "every rehab that's available" because "he gets [that] he is out of time." Father concluded by saying that he had not tried inpatient treatment, so the juvenile court should "wait three months and see where we're at, and if we're at that point then, we don't have much of an argument."

The juvenile court ruled:

"Given the lack of progress, it is not feasible that the parents can complete services within a foreseeable time frame that will allow the child to safely return home to them. * * *

"Nobody wants this to happen, but you two hold the keys to the car. And you start making those decisions; what's best for your child moving forward and what's going to get your job back or not."

At the end of its oral ruling, the juvenile court stated:

"And I probably wouldn't do this if it wasn't for the past history, I'll be honest. But that past history is compelling in regards to this. But the court finds that that is best.

[The] court finds it's in the best interest to allow [ODHS] to maintain care, control, and custody of [H] pending future determinations by the court."

Father did not contemporaneously object to that statement, but we conclude that it is appropriate in this instance to waive the preservation requirement because, based on our review of the record, father had no practical opportunity to object to the statement. *See Peeples v. Lampert*, 345 Or 209, 220, 191 P3d 637 (2008) (explaining that "the preservation requirement [can] give[] way entirely * * * when a party has no practical ability to raise an issue").

On the merits, father's argument does not provide a basis for reversal. A jurisdictional judgment provides a parent with notice of the deficiencies that they must adequately address for the juvenile court's jurisdiction to end. *Dept. of Human Services v. N. M. S.*, 246 Or App 284, 300, 266 P3d 107 (2011). It is legal error for the juvenile court to rely, "at least in part, on facts not fairly encompassed within the grounds for jurisdiction in reaching its conclusion * * * that a change in plan * * * was warranted." *Id.* at 287.

In the context of the juvenile court's rulings, the comment about father's "past history" was an observation that father's failure to participate in services for substance abuse and failure to make efforts to develop a relationship with H mirrored his behavior in a prior dependency case with another child that ultimately led to the termination of father's parental rights to that child. In context, the juvenile court's statement was a short-hand way to explain that it had determined that father's inaction prevented ODHS from referring him to inpatient treatment, that father's inaction had prevented him from developing a better relationship with H, and that father's pattern of failing to avail himself of services in dependency cases showed that waiting three more months—until 12 months after the juvenile court asserted jurisdiction—was unlikely to change the circumstances. Therefore, the juvenile court did not err when it changed H's permanency plan from reunification to adoption.

Affirmed.